## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

PENNY CONNER,

     Plaintiff,

v.                                                           CIVIL ACTION NO. 3:21-cv-00022

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

     Defendant.

### PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Penny Conner ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") for a period of disability under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. (ECF No. 1.) By standing order entered on January 4, 2016, and filed in this case on January 11, 2021, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12), and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 15).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 12), **GRANT** the Commissioner's request to affirm her decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 50 years old[2] at the time of her alleged disability onset date and 54 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. 61.)[3] She is a high school graduate. (Tr. 226.) Most recently, she worked as a cashier and sales associate at Cracker Barrell, and she has also been employed as a cashier at a tobacco store and sales associate at another restaurant. (Tr. 227.) Claimant alleges that she became disabled on July 10, 2015, due to osteoarthritis of the right knee, sacroiliac ("SI") joint dysfunction, lumbar spondylosis, and obesity. (Tr. 52.)

Claimant filed her application for benefits on September 25, 2018. (Tr. 201.) Her claim was initially denied on January 11, 2019, and again upon reconsideration on February 26, 2019. (Tr. 114, 126.) Thereafter, on March 29, 2019, Claimant requested a hearing. (Tr. 67.) An administrative hearing was held before ALJ Susannah Merritt on February 20, 2020, in Huntington, West Virginia, with the ALJ appearing remotely via teleconference from Philadelphia, Pennsylvania. (Tr. 67-90.) On March 25, 2020, the ALJ rendered an unfavorable decision. (Tr. 49-61.) Claimant then sought review of the

---

[2] Claimant attained age 50 on July 10, 2015 for purposes of this action pursuant to 20 C.F.R. § 404.2(4). (Tr. 201.)

[3] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 7.

ALJ's decision by the Appeals Council on April 9, 2020. (Tr. 195-200.) The Appeals Council denied Claimant's request for review on November 10, 2020, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1-6.)

Claimant timely brought the present action on January 8, 2021, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed an Answer (ECF No. 6) and a transcript of the administrative proceedings (ECF No. 7). Claimant subsequently filed her Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12), and in response, the Commissioner filed her Brief in Support of Defendant's Decision (ECF No. 15). As such, this matter is fully briefed and ready for resolution.

### B. Relevant Medical Evidence

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

On December 10, 2014, shortly before the alleged date of onset, Claimant presented to Marshall Health with a complaint of right hip pain. (Tr. 627-28.) Examination by the treating physician indicated "focal tenderness to palpation about the PSIS and SI joint on the right as well as in the paraspinal musculature about the lumbar spine," and Claimant was found to have "[n]egative Stinchfield and mildly antalgic gait on the right." (Tr. 628.) However, the physician also noted "[p]ain-free hip range of motion in flexion, extension, internal and external rotation" as well as "[n]egative active piriformis sign" and "[n]o tenderness to palpation about the trochanteric bursa." (*Id.*) Other than as noted, Claimant was found to have "intact sensory and motor examination distally in all peripheral nerve distributions and a well-perfused feet with 2+ pedal pulses"

and "[n]egative sciatic tension sign." (*Id.*) X-ray imaging indicated "well-preserved femoral acetabular joint space with no significant osteoarthritis or femoral acetabular impingement morphology." (*Id.*) The physician discussed his findings with Claimant and explained that the primary cause of Claimant's pain was likely facet arthropathy with or without neural foraminal compromise. (*Id.*) He ordered an MRI and planned to follow up. (*Id.*)

A lumbar spine MRI taken on January 10, 2015 showed normal alignment and no significant disc protrusions, canal stenosis, neural foraminal compromise, or cord signal abnormality; however, the MRI did reveal bilateral facet arthropathy at L4-5, worse on the left. (Tr. 308, 330). It was further noted that Claimant exhibited paraspinal muscle spasm, scattered trigger points, and pain with lumbar range of motion (Tr. 308).

On April 8, 2015, Claimant presented to Ahmet Ozturk, MD, for a pain management consult; she complained of severe right hip pain and described as sharp, stabbing, and pins and needles sensation (Tr. 309). On examination, she had pain with palpation over her lumbar spine and right SI joint, but displayed a non-antalgic gait was able to walk unassisted (Tr. 308). Claimant's lower extremity movements were found to be unrestricted and non-painful, and there was no obvious muscle weakness or wasting (Tr. 309). Further, Claimant showed full (5/5) muscle strength on a global basis (*Id.*). A straight leg raise was negative bilaterally for spinal nerve root involvement. (*Id.*). A lumbar x-ray showed neural foramina and facet arthropathy at the right lower levels (Tr. 307). The impression was "SI Joint Syndrome, Right, Lumbar spondylosis, bilateral, [and] Myofascial Pain Syndrome." (Tr. 309.) The primary pain generator was determined to be "posterior elements of the lumbosacral spine." (*Id.*) The recommended treatment was physical therapy, diagnostic nerve blocks and possible radiofrequency facet

rhizotomy for the SI joint and lumbar facet nerves, trigger point injections, and follow-up with Claimant's primary care physician regarding weight loss. (Tr. 309-310.)

Claimant followed up with the diagnostic nerve block procedures, undergoing a lateral branch block in her lumbosacral spine on May 14, 2015, followed by a lumbar medical branch block on May 29, 2015. (Tr. 314-18.) As initially recommended, following the diagnostic block procedures, Claimant underwent a lumbar facet rhizotomy on August 7, 2015. (Tr. 320-23).

On September 8, 2015, Claimant presented for a follow-up pain management appointment with complaints of right hip and leg pain (Tr. 324). Records from this visit note that "[t]he patient is not participating in a physical therapy program" as previously recommended. (*Id.*) Claimant rated her pain as a 7 on a scale of 1 to 10, but described her physical functioning as better than the previous visit (Tr. 325). She reported that "she has gotten good relief in her SI" joint after the rhizotomy. (Tr. 326.) A right piriformis injection was prescribed, and Claimant underwent this procedure with ultrasound on September 29, 2015 (Tr. 326-29).

At a follow-up appointment in late October 2015, Claimant reported minimal pain other than her "usual joint pain" (Tr. 335). She also reported 50-60% relief from her right piriformis procedure, with lasting relief two weeks later (Tr. 334). On examination, she was able to stand and walk unassisted, with a non-antalgic gait, and was in no acute distress (*Id.*).

On a follow-up appointment on April 13, 2016, Claimant continued to complain of back pain, joint pain, and muscle spasms (Tr. 336). On examination, she had tenderness in her right lower lumbar facets but, again, was in no acute distress, and her gait was non-antalgic (Tr. 337). Her SI joints and coccyx were non-painful on palpation, and she

exhibited no paraspinal muscle spasms or significant trigger points (*Id.*). It was further noted that, Claimant was four feet and eleven inches tall and weighed 257 pounds, indicating Class III obesity with a BMI of over 50 (*Id.*). Sherry Perry, FNP-BC, diagnosed SI joint dysfunction and lumbosacral spondylosis, prescribed Gabapentin, and ordered a lumbar facet nerve procedure (Tr. 338). On May 23, 2016, Claimant underwent the lumbar facet nerve block procedure as recommended. (Tr. 339).

At her next appointment in June 2016, Claimant reported 80% relief from her medial branch block for a "couple of weeks," after which her pain returned (Tr. 344-345). Her physical examination was normal other than bilateral facet tenderness (Tr. 344). On July 21, 2016, Claimant underwent another lumbar facet rhizotomy (Tr. 346-47). She reported some tenderness and soreness in her right hip at her next appointment in August 2016, but also 75% relief that was "still lasting" since her procedure (Tr. 352). She admitted that her physical functioning was better and rated her average pain level at 3 out of 10 (Tr. 353). Claimant did have tenderness to palpation of her right piriformis muscle on examination (Tr. 352). Nonetheless, her gait was still normal, and she had no abnormalities in her upper and lower extremities (*Id.*). Her doctor planned for another piriformis injection (Tr. 353). However, there is no evidence of any further treatment with this provider.

Claimant presented to her primary care physician on November 1, 2016, with complaints of continuing lumbar spine pain (Tr. 647). She denied much relief from her interventional pain management treatments but admitted that her medications (gabapentin and meloxicam) had been helpful (*Id.*). A physical examination again showed Claimant to be in no distress and with no abnormalities in her lumbar spine, hips, or right knee (Tr. 648). Her Body Mass Index ("BMI") was again noted to exceed 50. (*Id.*) Mathew

Weimer, MD diagnosed lumbar radiculopathy and prescribed refills of Claimant's gabapentin and meloxicam (Tr. 649).

On June 13, 2017, Claimant sought emergency care after hurting her right knee while stepping into a truck (Tr. 459). On examination, she was noted to exhibit pain behaviors while moving from the wheelchair to the bed and had limited range of motion and tenderness in her right knee (Tr. 460-461). However, she was also in no acute distress and exhibited no deformity or effusion and a normal neurologic examination (*Id.*). An x-ray of her right knee was found to show no abnormality (Tr. 461, 464). Claimant was discharged with a diagnosis of knee pain and prescription of a knee splint (Tr. 462).

Claimant followed up with her orthopedist the next day and underwent an ultrasound of her right knee that was also normal (Tr. 612-613). Additional x-rays showed moderate degenerative changes in the right knee, but no evidence of effusion, fractures, or dislocations (Tr. 616). Another physical examination was notable for swelling and tenderness in the right knee (Tr. 615). Her orthopedist treated her with a steroid injection and referred her to physical therapy for four to six weeks (Tr. 616).

Claimant returned to see her primary care physician in early August 2017 with complaints of continued right knee pain that was "thought to be a meniscus tear" pending an MRI (Tr. 519). However, she admitted that she had not yet started physical therapy as instructed by her orthopedist (*Id.*). Physical examination findings from that appointment do not reflect any abnormalities, and Claimant was not provided any specific treatment (Tr. 521). She followed up later that month and reported that her knee was "still giving her some trouble" (Tr. 516). She told her doctor she had been icing it but was not wearing a brace (*Id.*). Claimant denied any benefit from meloxicam but admitted she had still not started physical therapy as recommended by her orthopedist (*Id.*). Her physical

examination was normal other than some crepitus on motion in her right knee (Tr. 518). Her doctor prescribed indomethacin, three times a day as needed for pain (*Id.*).

Claimant's last recorded medical appointment during the period at issue is with her primary care physician on September 7, 2017. (Tr. 513.) Claimant presented with continued complaints of right knee pain (*Id.*) Claimant reported that her previous knee injection had helped for approximately two weeks (*Id.*). On examination, she was noted to have tenderness to palpation in the medial aspect of her right knee, as well as crepitus on motion (Tr. 515). Claimant weighed 247 pounds and her BMI had decreased to 51.2 (Tr. 514). She was noted to be in no acute distress, and her examination was otherwise normal (Tr. 515). Dr. Weimer diagnosed primary osteoarthritis of the right knee, administered a right knee injection, and instructed Claimant to follow up as needed. (Tr. 515.)

## C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d

8

337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The

claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The

Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, ALJ Susannah Merritt concluded that Claimant's earnings record showed she "acquired sufficient quarters of coverage to remain insured through December 31, 2017" and thus "must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (Tr. 50.) She further determined that Claimant had not engaged in substantial gainful activity "during the period from her amended alleged onset date of July 10, 2015 through her date last insured of December 31, 2017." (Tr. 51.) The ALJ then found that Claimant's osteoarthritis ("OA") of the right knee, sacroiliac ("SI") joint dysfunction, lumbar spondylosis, and obesity constituted "severe" impairments. (Tr. 52.) However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 54-55.) Upon assessing Claimant's RFC, the ALJ determined that, through the date last insured, Claimant "had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)." (Tr. 55.)

The ALJ concluded that Claimant "has no past relevant work" and therefore that "[t]ransferability of job skills [wa]s not an issue." (Tr. 60.) The ALJ also noted that, on the date last insured, Claimant was "an individual closely approaching advanced age" with "a high school education and is able to communicate in English." (*Id.*) Even though the ALJ determined that Claimant was able to perform the full range of light work, she

nonetheless enlisted a Vocational Expert ("VE") to aid in her finding that Claimant was capable of working as a cashier, ticket taker, or laundry folder during the relevant time period. (Tr. 60-61.) As a result, the ALJ concluded that Claimant was "not under a disability, as defined in the Social Security Act, at any time from July 10, 2015, the amended alleged onset date, through December 31, 2017, the date last insured." (Tr. 61.)

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III.    ANALYSIS

Claimant argues that the ALJ's Decision is not supported by substantial evidence for two central reasons. First, Claimant argues that the ALJ erred in assessing Claimant's RFC. (ECF No. 12 at 7-9.) Specifically, Claimant argues that the ALJ failed to "specify how long [Claimant] could sit, stand, and walk in an eight-hour workday," (*id.* at 7), failed to provide a "function-by-function analysis" to explain her conclusion that Claimant could perform light work and not sedentary or less than sedentary work, (*id.* at 7-8), failed to consider Claimant's subjective complaints of pain, and failed to properly consider whether obesity caused any functional limitations in combination with Claimant's right knee osteoarthritis, SI joint dysfunction, and lumbar spondylosis (*id.* at 8-9). Second, Claimant argues that the ALJ failed to adequately develop the record and should have requested a consultative medical examination or served medical expert interrogatories. (*Id.* at 9-10.) Claimant asks this Court to reverse the Commissioner's decision and award her benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.)

The Commissioner responds that Claimant is really challenging the ALJ's weighing of the evidence, and that Claimant's arguments rely more on trivializing over semantics than a straightforward analysis of the ALJ's Decision, which the Commissioner asserts was thorough and properly analyzed and considered the evidence. (*See* ECF No. 15.) The Commissioner respectfully requests that this Court affirm the ALJ's decision. (*Id.* at 19.)

### A.    ALJ's Assessment of Claimant's RFC

First, Claimant challenges the ALJ's assessment of Claimant's RFC on three grounds. Claimant argues that the ALJ failed to comply with SSR 96-8p because she did not "specify how long [Claimant] could sit, stand, and walk in an eight-hour workday."

(ECF No. 12 at 7.) Claimant further argues that the ALJ failed to comply with SSR 96-8p because she ignored the Claimant's subjective complaints of pain and did not provide a "function-by-function analysis" to explain her conclusion that Claimant could perform light work and not sedentary or less than sedentary work. (*Id.* at 7-8). Third, Claimant argues that the ALJ failed to comply with SSR 19-2p because she failed to properly consider whether obesity caused any functional limitations in combination with Claimant's right knee osteoarthritis, SI joint dysfunction, and lumbar spondylosis. (*Id.* at 8-9.) The Court will address each argument in turn.

### i.    *ALJ's Compliance with SSR 96-8p*

Claimant's challenge to the ALJ's Decision first rests on the ALJ's determination that Claimant could perform a full range of light work. According to Claimant's argument, because the ALJ did not expressly specify how long the Claimant could sit, stand, and walk in an eight-hour workday, the ALJ's description of "light work" as defined in 20C.F.R. § 416.967(b) "does not constitute an RFC pursuant to Agency requirements" under SSR 96-8p. (ECF No. 12 at 7.) This argument is meritless, because it relies on an overly literal interpretation of the applicable regulation and ignores the ALJ's incorporation by reference of Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983), which specifies each factor. (Tr. 22.)

Pursuant to SSR 96-8p, an ALJ's RFC assessment[4] must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by- function basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1

---

[4] An "RFC" assessment refers to the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). It is an administrative finding reserved solely to the ALJ, which the ALJ independently formulates based on all the relevant evidence, including medical records, medical source opinions, and the claimant's description of her limitations. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 404.1527(d)(2); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *1 (July 2, 1996).

(July 2, 1996). However, remand is appropriate only when an ALJ fails to address a "relevant function" or "other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Neither of these factors is present in the case at hand. Claimant's argument sidesteps the ALJ's finding that Claimant could perform light work *as defined in the regulations*. (Tr. 22.)

The regulations incorporated by the ALJ explain that "light work" includes lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and generally involves "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Additionally, SSR 83-10 explains that "the full range of light work" includes "standing or walking off and on, for a total of approximately six hours of an eight-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

A district court sitting in the Fourth Circuit rejected a claimant's similar argument and found an ALJ's implicit incorporation of the definition of "light work" to be sufficient in *Robinson v. Astrue*, No. 2:10-cv-185, 2011 WL 4368416, at *8 (D.S.C. Feb. 18, 2011) (citing SSR 83-10; *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006), *report and recommendation adopted*, 2011 WL 4368396, at *1 (D.S.C. Sept. 19, 2011)). There, the district court explained that "the limitation to light work implicitly includes a finding that the plaintiff could stand or walk off and on for a total of approximately six hours of an eight-hour workday." Further, the district court in *Robinson* remarked that "[i]n fact, [the inclusion] is not even very implicit.  The ALJ expressly indicates that the plaintiff can perform light work 'as defined in 20 CFR 404.1567(b)[.]'" *Id.*

Here, just as in *Robinson*, the ALJ's express limitation of Claimant's RFC to light work not only "implicitly includes a finding that [Claimant] could stand or walk off and

on for a total of approximately six hours of an eight-hour workday," but in fact "expressly indicates that the [Claimant] can perform light work 'as defined in 20 C.F.R. § 404.1567(b).'" *Id.*; (Tr. at 55.) In light of this context that Claimant's argument ignored, the ALJ's Decision did indeed explain Claimant's limitations regarding her ability to stand, sit, and walk; therefore, Claimant's argument fails on this ground.

Next, Claimant argues that the ALJ failed to provide a "function-by-function analysis" to explain her conclusion in compliance with SSR 96-8p because she failed to explain her conclusion that Claimant could perform light work and not sedentary or less than sedentary work. (ECF No. 12 at 7-8.) This argument is likewise meritless because it asks the Court to re-weigh record evidence of Claimant's subjective complaints of pain, and ignores the ALJ's thorough and proper analysis of the record in support of her findings of fact.

In evaluating the intensity, persistence, and severity of a claimant's endorsed limitations, the ALJ must consider all of the relevant evidence on the record, including all the relevant medical evidence; she "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). The desired result is a decision which "build[s] an accurate and logical bridge from the evidence to his conclusion," including an explanation for the ALJ's decision to give less weight to evidence that conflicts with her conclusion. *Id.* at 100.

In reviewing the record for substantial evidence, the Court's role is not to "re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Rather, in

reviewing the ALJ's "unenviable task of choosing between the alternatives," presented by conflicting evidence, the Court's task is to ensure that the ALJ has carefully considered the evidence, made reasonable and supportable inferences, and explained her conclusions without ignoring conflicting evidence. *McCall v. Apfel*, 47 F. Supp. 2d 723, 731 (S.D. W. Va. 1999).

Here, the ALJ's Remand Decision does not "cherry-pick" facts that support her conclusion while ignoring conflicting evidence. To the contrary, the ALJ carefully considered the evidence, made reasonable and supportable inferences, and explained her conclusions in detail by specifically citing to supporting evidence in the record. A review of the record indeed supports the ALJ's determination. Claimant's medical records confirm diagnoses and treatment for several musculoskeletal impairments, including right knee OA, SI joint dysfunction, and lumbar spondylosis (Tr. 305-649). They also document Claimant's complaints of continued pain and standing/walking limitations, even after multiple injections, rhizotomies, branch blocks, and use of medication. (*Id.*). The ALJ summarized, analyzed, and considered that same evidence when constructing Claimant's RFC (Tr. 52-60). However, the ALJ considered other evidence in the record—in particular, Claimant's conservative treatment history, relatively benign diagnostic imaging and physical examinations, and self-reported daily activities and improved pain levels—to find that, while Claimant was limited by her severe impairments during the relevant period, it was "not to the extent alleged" (Tr. 58).

Claimant argues that the ALJ ignored Claimant's reported symptoms and applied an improper standard by requiring a claimant's allegations be completely consistent with the record. (ECF No. 12 at 12) (citing the ALJ's statement in her Decision that these symptoms were "not entirely consistent with the medical evidence and other evidence in

the record" at Tr. 58). But this argument's hyperfocus on the phrase used by the ALJ and ignores the context in which it was made. The ALJ's Decision clearly considered Claimant's subjective complaints throughout her decision and—rather than requiring total consistency—explained why Claimant's reports of pain were afforded less weight. In fact, the ALJ referenced Claimant's complaints of pain no less than seventeen times in her RFC discussion alone (Tr. 55-57). The ALJ also specifically referred to SSR 16-3p when stating that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 55). In light of this discussion, it is clear that Claimant's complaints of pain were not "disregarded" by the ALJ as Claimant alleges, (*see* ECF No. 12 at 12), but were considered as one of many pieces of evidence in formulating the ALJ's finding of Claimant's RFC (Tr. 55-60).

In determining the credibility of Claimant's subjective complaints of pain, the ALJ referenced conflicting diagnostic imaging studies on or before the alleged onset of Claimant's disability that were normal and "do not support the degree of pain and functional limitations alleged." (Tr. 58) (citing Tr. at 330-32, 440, 456, 467-470). The ALJ further noted that findings from physical examinations of the Claimant showed no severe abnormalities in Claimant's lumbar spine, right knee, or SI joint; a non-antalgic gait; normal ambulation without an assistive device, and no abnormalities in Claimant's upper or lower extremities. (Tr. 58) (citing Tr. 307-08, 326, 334, 337-38, 344, 352, 460-61, 514-15, 517-18, 615, 648-49).

Additionally, the ALJ noted Claimant's routine and conservative treatment during the relevant period, including numerous interventional pain treatments from her pain management and primary care physicians, after which she reported improved symptoms

"on multiple occasions" (Tr. 50) (citing Tr. 304-359, 495-537, 630-678). The ALJ also observed that Claimant was recorded to be noncompliant with her orthopedist's physical therapy referral. (Tr. 51) (citing Tr. 516, 519). Finally, the ALJ noted Claimant's reported activities of daily living both during and after the relevant period, including preparing food, doing laundry, driving a car, going for short walks, shopping in stores, and helping care for her mother-in-law with Alzheimer's (Tr. 51) (citing Tr. 79-82, 95).

Thus, rather than ignoring Claimant's complaints of pain, the ALJ considered Claimant's reported pain along with the other evidence in the record, made a proper credibility determination, and explained the basis for that determination—including why such complaints were given less weight, with supporting citations to record evidence. In other words, the ALJ's credibility determination built an accurate and logical bridge from the evidence to her conclusion. *Arakas*, 983 F.3d at 100.

A reviewing court does not remand for a further function-by-function assessment when the ALJ "sufficiently explain[s] h[er] conclusions" and "use[s] evidence from the record to explain" the RFC finding—just as the ALJ did here. *Ladda v. Berryhill,* 749 F. App'x 166, 173 (4th Cir. 2018). As set forth *supra*, the Court's role is to ensure that the decision is supported by substantial evidence—not to re-weigh conflicting evidence or substitute its own judgment for that of the Agency's. Thus, when—as is the case here—the ALJ has carefully considered the evidence, made reasonable and supportable inferences, and explained her conclusions without ignoring conflicting evidence, her credibility findings are "virtually unreviewable by this Court on appeal." *Burns v. Colvin*, No. 13-25614, 2015 WL 1321214, at *16 (S.D. W.Va. Feb. 2, 2015) (quoting *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)); *McCall*, 47 F. Supp. 2d at 731.

Similarly, Claimant finally argues that the ALJ should have questioned her about her alleged treatment non-compliance if it was of concern in her decision (ECF No. 12 at 13) (citing Tr. 59). This argument similarly fails, as SSR 16-3p indicates that the Agency *may*—but is not *required*—to question a claimant at a hearing about her failure to comply with treatment. SSR 16- 3p, 2016 WL 1237954, at *8. Nevertheless, the ALJ *did* question Claimant extensively on related topics, including her symptoms, functional limitations, daily activities, and medications during the narrow relevant period (Tr. 77-83). The ALJ had no obligation to inquire further as to why Claimant was non-compliant with her doctor's recommendation—and, tellingly—Claimant offers no specific reason in her brief, (*see* ECF No. 12 at 13).

The ALJ's credibility determination is supported by substantial evidence, and Claimant's reference to conflicting evidence that was properly addressed by the ALJ does not overcome this fact. While Claimant points to other evidence that she posits could support a more restrictive RFC finding—primarily her subjective complaints of pain and standing/walking limitations—she essentially requests that this Court re-weigh the evidence and decide the outcome of her case differently, which is impermissible under the substantial evidence standard of review. *Johnson*, 434 F.3d at 653 (citing 42 U.S.C. § 405(g)). therefore, Claimant's argument fails on this ground as well.

ii.    *ALJ's Compliance with SSR 19-2p*

Next, Claimant argues that the ALJ failed to properly consider Claimant's obesity in her findings in compliance with SSR 19-2p (ECF No. 12 at 8-9). Pursuant to SSR 19-2p, obesity is considered at each step of the sequential evaluation process. *See* Social Security Ruling (SSR) 19-2p, 2019 WL 2374244, at *1 (May 20, 2019). Consistent with this guidance, the ALJ considered Claimant's obesity throughout the course of her

decision (Tr. 49-61). At step two, the ALJ found that Claimant's obesity was a severe impairment that caused more than a minimal limitation in her ability to perform basic work activities (Tr. 52). Though the ALJ determined at step three that Claimant did not have an impairment or combination of impairments that met or medically equaled a listing, (Tr. 54-55), in doing so the ALJ specifically discussed Claimant's obesity, confirming that it was "considered in conjunction with the claimant's other impairments as instructed by SSR 19-2p" (Tr. 54).

The ALJ then went on to explain that, while Claimant was recorded with BMIs in the "low to mid 50s" during the period at issue, there was no indication in the record that her obesity has significantly exacerbated any of her other severe impairments or impaired her ability to walk unassisted (*Id.*). The ALJ then referenced Claimant's recorded physical examinations confirming that she was able to ambulate unassisted (*Id.*). Even so, the ALJ explained that any effects that Claimant's obesity were "accounted for in the range of light work set forth in the [RFC]." (*Id.*).

Additionally, in her thorough discussion of Claimant's RFC, the ALJ again considered Claimant's obesity, consistent with SSR 19-2p (Tr. 55-57). The ALJ noted Claimant's testimony that she was four feet, eleven inches tall and weighed about 200 to 205 pounds during the relevant period (Tr. 55). The ALJ analyzed Claimant's medical treatment at the time, including physical examination findings of a normal gait without the use of an assistive device (Tr. 57-59). Further, the ALJ explained that all of Claimant's severe physical impairments—including her obesity—were "fully accommodated by the limitations in the [RFC] to the full range of light work" (Tr. 60). *See Parker v. Astrue*, No. 6:07-cv-00472, 2008 WL 2405026, at *3 (S.D. W. Va. June 11, 2008) (finding that the

ALJ adequately considered the combined effect of the plaintiff's impairments through a thorough RFC assessment).

In short, Claimant makes no more than a generalized argument regarding her obesity and does not point to any specific evidence that the ALJ failed to consider (ECF No. 12 at 7-8). This falls far short of the standard for remand. *See Russell v. Chater*, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished table decision) (noting that a claimant must explain the basis of a theory as to how obesity limits her functional capacity and explaining that speculation is not permitted). *See also Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005) (explaining that a generalized assertion that an individual's weight makes it more difficult for him to stand, walk, and manipulate his hands and fingers, is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on voluminous medical evidence as a basis for his findings). In sum, a review of the ALJ's decision shows that the ALJ fully evaluated Claimant's obesity (Tr. 49-61). Accordingly, Claimant's argument fails on this ground as well.

In sum, the ALJ's credibility determination is supported by substantial evidence, and Claimant's reference to conflicting evidence that was properly addressed by the ALJ does not overcome this fact. While Claimant points to other evidence that she posits could support a more restrictive RFC finding—primarily her subjective complaints of pain and standing/walking limitations—she essentially requests that this Court re-weigh the evidence and decide the outcome of her case differently, which is impermissible under the substantial evidence standard of review. *Johnson*, 434 F.3d at 653 (citing 42 U.S.C. § 405(g)). Therefore, Claimant's argument fails on this ground as well.

B.    *ALJ's Development of the Record*

Finally, Claimant argues that the ALJ erred because she failed to meet her obligation to develop a full and fair record in the hearing because the ALJ did not request a consultative examination or serve interrogatories on the medical experts. (ECF No. 12 at 9-10.) In light of the thorough analysis of the record, this argument lacks merit as well.

The Fourth Circuit has noted that an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Id.* However, the Fourth Circuit's primary concern in this context was the *pro se* status of the claimant. *See id.* Where an applicant is represented by counsel, an ALJ's duty to develop the record generally arises only where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *See Ferrell v. Astrue*, 11-503, 2012 WL 4378131, at *10 (S.D. W. Va. June 22, 2012). "[T]o prevail . . . on the argument that the ALJ failed to develop the record," the claimant "must provide a factual foundation upon which the Court can perceive a gap in the evidentiary record that is prejudicial to [c]laimant." *Blankenship v. Astrue*, 11-5, 2012 WL 259952 (S.D. W. Va. Jan. 27, 2012). And, to prove prejudice, the claimant must prove that evidence existed that would have altered the result. *Id.*

Here, Claimant has been represented by counsel during all relevant proceedings, and she failed to demonstrate either a gap in the evidentiary record, or any resulting prejudice. First, Claimant cannot point specifically to any evidentiary gap. The regulations do not require an ALJ to base her RFC determination directly on a medical opinion. *See* 20 C.F.R. § 404.1527(d). To the contrary, an ALJ has discretion to determine whether a

consultative examination or medical expert is necessary. *See Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (per curiam) ("[T]he ALJ has discretion in deciding whether to order a consultative examination.").

Nor can Claimant demonstrate prejudice from the absence of a consultative examination. Tellingly, Claimant does not explain how a consultative examination performed in 2019 or 2020 would have provided insight into Claimant's functioning prior to the date she was last insured on December 31, 2017. Claimant points to no apparent unresolved inconsistency in the evidence that required further input from a medical source, such as a medical expert. Unlike in *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016), on which Claimant relies (ECF No. 12 at 10), the ALJ here correctly considered the entirety of the evidence created during the relevant period in formulating her RFC finding. In *Stage*, seven months after a non-examining physician opined that the claimant could sit, stand, or walk for six hours in an eight-hour workday, a treating doctor diagnosed the claimant with a significant hip deformity and recommended a total hip replacement. 812 F.3d at 1123. The Seventh Circuit found that the treating doctor's evaluation contained "significant, new, and potentially decisive findings" that "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by non-examining physician." *Id.* at 1125. Here, in contrast, there were no "significant, new, and potentially decisive findings" during or after the period evaluated by the ALJ, and Claimant points to none. *See id.* Therefore, in addition to being a non-binding decision from another circuit, the facts of *Stage* are readily distinguishable to this case.

Likewise, Claimant's reliance on the Seventh Circuit case *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014), to argue that the ALJ was required to rely on an expert opinion (ECF No. 12 at 9), is misplaced. In *Moon*, the ALJ considered the claimant's migraines severe,

but implied they had a minimal role in influencing the ALJ's RFC finding. 763 F.3d at 721. The ALJ in *Moon* also relied on an unremarkable brain MRI to support the lack of RFC limitations related to the plaintiff's migraines, when in fact this evidence is fully consistent with such a diagnosis. *Id.* Thus, the court in *Moon* found that the ALJ's evidence analysis was "not logically connected" to the RFC and that he was required to rely on a medical expert "instead of determining the significance of particular medical findings themselves." *Id.* at 721–22. In contrast, the ALJ here considered all of Claimant's reported symptoms of severe musculoskeletal impairments, then evaluated their consistency with her treatment history, recorded physical examinations, diagnostic imaging and other objective testing, and self-reported activities during the relevant period—evidence that is pertinent to those impairments and their effect on Claimant's functioning (Tr. 56-60). In short, the ALJ properly conducted her role as factfinder in determining that, while Claimant's impairments limited her functioning, they did not preclude her from all work (*id.*). Claimant identifies no credible error in the ALJ's analysis. The undersigned therefore **FINDS** that the ALJ's Decision is supported by substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 12), **GRANT** the Commissioner's request to affirm her decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers,

United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: March 7, 2022

Dwane L. Tinsley
United States Magistrate Judge

26